

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

WEEKS TRACTOR & SUPPLY
COMPANY, LLC

CIVIL ACTION NO. 1:09-cv-2104

-vs-

JUDGE DRELL

ARCTIC CAT INC. and
ARCTIC CAT SALES INC.

MAGISTRATE JUDGE KIRK

## RULING

Before the Court are cross motions for partial summary judgment by Plaintiff Weeks Tractor and Supply Co, LLC ("Dealer" or "Plaintiff") (Doc. 37) and Defendants Arctic Cat Inc. ("Arctic") and Arctic Cat Sales Inc. ("Arctic Sales") (collectively "Defendants") (Doc. 40).[1]  Considering the parties' filings and the other evidence in the Record and for the reasons given below, we DENY Plaintiff's motion (Doc. 37) and GRANT that of Defendants (Doc. 40).

### BACKGROUND

Plaintiff was a dealer or retail seller of Arctic Cat all-terrain vehicles ("ATVs") in Natchitoches Parish, Louisiana.  Defendant Arctic is a manufacturer of such ATVs.  Defendant Arctic Sales distributes these ATVs, including from 2004 to 2009 those manufactured by Arctic to Plaintiff.  Plaintiff terminated its dealership in the latter part of 2009, apparently under less than cordial circumstances; it filed a lawsuit alleging various claims, eventually leading to the present dispute.  (Doc. 40-4, pp. 6-7).

---

[1]  More specifically, Plaintiff only moved against Defendant Arctic, while both Defendants moved against Plaintiff.  As we rule for Defendants, and for the reasons discussed in Part IV.B of the Analysis below, we hold that the present ruling and accompanying order apply to all parties.

Before terminating its dealer agreement, Plaintiff had ordered model year 2010 ATVs in July and September of 2009. It apparently received both orders prior to its effective termination, with the latter delivered after it had already given notice.

Additionally, at termination Plaintiff still had in its possession vehicles from model year 2008. The core of the present dispute arises from these vehicles, and specifically Plaintiff's claim that Arctic was and is obliged to repurchase them.[2]

The parties agree that the basis for Defendants' obligation is the version of Louisiana's motor vehicle repurchase statute ("the Repurchase Statute") in force at the time of these events. It reads, in relevant part:

> § 1268.1. Manufacturer mandatory repurchase; motorcycle or all-terrain vehicle dealer; marine dealer; recreational or travel trailer dealer; utility trailer dealer
>
> A. (1) In the event that a dealer ceases to engage in the business of being a motorcycle or all-terrain vehicle dealer . . . and after notice thereof to the manufacturer or distributor . . . within thirty days thereafter . . . the manufacturer or distributor, at a minimum, shall repurchase all new and unused motorcycles and all-terrain vehicles **of the current and immediate prior model year** . . . .

LA. REV. STAT. ANN. 32:1268.1; La. Legis. Acts 2009, No. 403, § 1, eff. July 7, 2009; 2009 La. Sess. Law Serv. Act 403 (S.B. 175) (West) (emphasis added).[3]

At issue is the bolded phrase "current and immediate prior model year." Plaintiff argues that this language requires Defendants to repurchase those vehicles from the model year the termination occurred – 2009, which it argues was the "current" model year – and the year immediately prior,

_____

[2] Plaintiff also had other items in its possession that Defendants were allegedly required to repurchase, such as spare parts and vehicles from model year 2009. The parties have apparently reached a settlement as to these items, and in any case Defendants' obligation with regards to them is not presently before us.

[3] This language was (re-)enacted in 2009, yielding the version of the statute applicable here. It was then amended in 2010, in the very next legislative session, to the present language and version, LA. REV. STAT. ANN. 32:1268.1, also discussed below.

-2-

2008.  In opposition, Defendants argue that the "current" model year was that of the last vehicles delivered before termination - in this case 2010 - so the statute requires it to repurchase Plaintiff's vehicles from that year and the year immediately prior, 2009.  In summary, the parties agree that the statute requires Defendant to repurchase the (unused) vehicles it had delivered to Plaintiff from model year 2009, but they disagree on whether that obligation extends to the 2008 models.[4]  Both sides seek summary judgement solely as to this point of statutory interpretation, a question of law.

ANALYSIS

## I. THE POSITIONS OF THE PARTIES

Plaintiff's main argument is a textual one, a "proper and logical interpretation . . . using the plain meaning of the words."  (Doc. 37-3, p. 13).  It argues that "current . . . model year" means what it says - the models from the current year - and it cites Black's Law Dictionary for the proposition that "current year" ordinarily means "the year now running."  *Id.*  As Plaintiff terminated its dealer agreement in 2009, the year then running was 2009, the prior year was 2008, and Arctic "would therefore have been required to repurchase those units having a model year of 2008."  *Id.*  Meanwhile, Plaintiff argues that Louisiana favors a plain meaning method of statutory interpretation, and as no other definition of these terms has ever been propounded – in the statute or by a court – there is no basis for diverging from this method here.  (Doc. 37-3, pp. 9-10) (quoting La. Civ. Code art. 9, discussed in greater detail below).

Defendants argue to the contrary on three bases.  First, based on the statute's text, they attempt to undermine Plaintiff's interpretation and to assert a textual argument of their own.  Against

---

[4] The disposition of Plaintiff's 2010 models is likewise not in dispute, though it is unclear to us whether this is because Plaintiff sold them all prior to termination, the parties reached a settlement, or for some other reason.

Plaintiff's interpretation, while Defendants agree that "current year" means what Plaintiff says, they observe that the statute does not refer to vehicles from the "current year" but to vehicles from the "current . . . model year."  They further note that the Louisiana Supreme Court has adopted the interpretative rule that:

> When interpreting a statute . . . [i]t is presumed that every word, sentence, or provision . . . was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the Legislature inserted idle, meaningless, or superfluous language in the statute or that it intended for any part or provision of the statute to be meaningless, redundant or useless.

(Doc. 40-4, pp. 8-9) (citing *ABL Mgmt, Inc. v. Bd. of Supervisors of S. Univ.*, 773 So.2d 131, 135 [La. 2000]) (internal citations omitted).  In addition, they observe that Plaintiff's analysis is "incomplete."  They concede that Black's Law Dictionary indeed says that the "current year" ordinarily refers to the "calendar year in which the event under discussion took place."  However, they observe that it also says that "the current fiscal year of a business may run from July 1st to June 30th, or some other twelve month period," indicating, they allege, that it is recognized that a relevant year for business purposes will often not correspond to the calendar year.  (Doc. 40-4, p. 10). Accordingly, they argue, the phrase "current . . . model year" should not be interpreted to have the same meaning as simply "current year," or at the least the phrase should be considered sufficiently ambiguous and Plaintiff's interpretation sufficiently suspect so as to warrant further inquiry.

In support of their own interpretation, Defendants argue that the meaning of the phrase "current . . . model year" is best understood textually according to its customary usage in the motor vehicle and ATV industry, where vehicles from the next model year are generally delivered to and

-4-

sold by dealers beginning the summer and fall of the previous calendar year.[5]  Accordingly, they

claim, it is widely understood in their industry that vehicles from the "current . . . model year" will

not be those from the current calendar year.  Consequently, they argue, a proper textual analysis of

the disputed phrase  leads to the rejection of Plaintiff's interpretation, and ultimately the adoption

of their own.

Second, Defendants argue from the law's purpose.  Specifically, they point out that under

Plaintiff's interpretation Defendants would only be required to repurchase vehicles from the 2009

and 2008 model years.  Meanwhile, Plaintiff had already received two shipments of vehicles from

the 2010 model year prior to its termination with the first arriving that summer, several months

before it gave notice.  If the purpose of a repurchase statute is to protect dealers from being stuck

with equipment and inventory post-termination, then it makes little sense, Defendants argue, for the

legislature to have provided for the repurchase of all vehicles except those most recently shipped,

and which the dealers are thus most likely to have on hand.  In support of this view, Defendants cite

the interpretation of similar statutes in sister states, as well as the newly enacted version of this

statute, which neither party contests adopts the rule urged by Defendants.

Finally, Defendants argue based on the authority of the Louisiana Recreational and Used

Motor Vehicle Commission, which administered this Act until 2005 or 2006,[6] and apparently in its

procedures used Defendants' interpretation.   The Commission seems never to have actually

published this rule, so Defendants present it through emails from Commission employees and

---

[5]  This is an assertion of fact, now law.  As it is here uncontested by Plaintiff, we presume its accuracy and
adopt it as part of our findings for the purpose of the present motion.  In any case, as discussed below,
though we accept and use it, it is ultimately not dispositive for our decision.

[6]  The parties disagree as to this date, which is irrelevant for the present ruling.

affidavits from their own corporate counsel, forms of evidence to which Plaintiff strenuously objects.

## II. GENERAL LEGAL STANDARDS

Under Rule 56, the Court will grant a party's motion for summary judgment only if:

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law . . . support[ing] the assertion by citing to particular parts of materials in the record.

Fed. R. Civ. P. 56. As the parties here seek summary judgment solely on a question of law, the usual rules about burden-shifting and whether a genuine issue of material fact exists do not apply. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

A federal court sitting in diversity applies state substantive law, including the state's choice of law rules and method of statutory interpretation. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 529 F.3d 569, 572-73 (5th Cir. 2008). "To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (internal citations omitted). "In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case." *Id.*

No Louisiana court has ever interpreted the statute in question here. Accordingly, issues which typically arise concerning the interplay of statutes and jurisprudence under Louisiana law are not present. See *id.*

Louisiana courts often employ a plain meaning method of statutory interpretation based on Civil Code article 9, which states that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further

interpretation may be made in search of the intent of the legislature." This article is entitled "Clear and unambiguous law" and should be contrasted with the following article, "Language susceptible of different meanings" which provides that "[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."

Importantly, both of these articles discuss whether the "law" and "the language of the law" are clear as a whole. The meaning of individual words or phrases in a law is governed by the following two articles, mostly notably article 11, "Meaning of words," which provides that "[t]he words of a law must be given their generally prevailing meaning" and that "[w]ords of art and technical terms must be given their technical meaning when the law involves a technical matter."

In addition, the interplay of these rules is clarified and supplemented by Louisiana Revised Statute 1:3, which states that:

> Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. *Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.*

(emphasis added); see also *Sales Tax Dist. No. 1 of Lafourche Parish v. Express Boat Co., Inc.*, 500 So.2d 364, 368 (La. 1987) ("It is presumed that the Legislature when enacting a statute intends the words of that statute to be construed in accordance with any well-known meanings that have become inextricably intertwined with the term itself.") (citing and quoting the statute).

Finally, Louisiana law presumes that the legislature uses language consistently – with the same word or phrase meaning the same thing – in similar circumstances. See *Tennessee Gas Transmission Co. v. Violet Trapping Co.*, 176 So.2d 425, 443 (La. 1965) ("Subsequent legislation

upon the same subject or upon cognate matters is useful in furnishing an interpretation of previous words and fixing their import.") (internal citations omitted).

In all, Louisiana's rules of statutory interpretation do not call for an individual phrase to be ripped out of the law or scheme in which it exists and interpreted as if by a layman. Rather, phrases should be interpreted according to their "generally prevailing meaning," with the meaning of technical terms or words of art defined according to the meaning that generally prevails in their given industry or context, consistency of meaning presumed when the same phrase is used in related areas, and, where language is ambiguous, with regard to the purpose of the law in which it is contained.

## III. THE LOUISIANA REPURCHASE STATUTE

In this light, while we agree with Plaintiff that its interpretation is not inconsistent with a layman's reading of the phrase "current or immediate prior model year," we find Defendants' interpretation ultimately to be correct. We make this finding based on our application of Louisiana's rules of statutory construction; we group our analysis under three distinct modalities of statutory interpretation, discussed in Parts A, B, and C below and summarized here, all of which we find favor Defendants' interpretation over that of Plaintiff.

First, intertextually, while the parties are correct that the disputed phrase is not explicitly defined in the statute, it – or a variant of it – is used on multiple other occasions in this and other versions of the statute. In these other instances, the meaning of the phrase is "clear and unambiguous," and the interpretation urged by Plaintiff would yield absurdity. As Louisiana assumes the law's intertextual consistency – that the legislature does not use the same phrase to mean different things in the same and closely related statutes – we are compelled to reject Plaintiff's interpretation and adopt that of Defendants.

Second, textually, as Defendants note, the inclusion of the word "model" distinguishes the phrase "current . . . model year" from the simpler "current year," which Plaintiff's interpretation ultimately uses as its synonym.  This distinction either casts the phrase as a term of art of the motor vehicle industry - the repurchase statute being one small part of a statutory scheme regulating this industry - or it imbues it with sufficient ambiguity to warrant interpreting its "generally prevailing meaning" in light of its customary usage, again that of the motor vehicle and ATV industry.  Either way, we are led to consider the phrase in light of how it is understood in that industry, and we find that Defendants' interpretation better corresponds to that usage than does that of Plaintiff.

Finally, in terms of the law's purpose, while we do not find either interpretation conclusive on this point, we agree with Defendants that their interpretation is more consistent with the statute's likely purpose than that of Plaintiff.

For all of these reasons, we agree with Defendants that the statute obliges them to repurchase the vehicles from the 2010 and 2009 models years, and not those from 2008.

## A. Intertextually, Defendants' interpretation is more consistent with the legislature's other uses of this and similar phrases

In determining the "generally prevailing meaning" of the disputed phrase, most compelling for this Court is the manner in which the legislature has used this and similar phrases in other, related instances.

Most directly, the new version of this statute requires the repurchase of vehicles "of the current and last prior model year delivered" to the dealer, replacing "immediate prior model year" with "last prior model year delivered."  LA. REV. STAT. 32:1268.1.  However, both versions define this "prior model year" with reference to the same point in time, the "current . . . model year."  In

turn, as stated, the parties agree - and this Court likewise finds it clear and unambiguous - that the two model years referenced by the new version of the statute are 2009 and 2010.

In that case, then under the new version of the statute the "last prior model year delivered" must be 2009, as the model year "prior" to 2010, and the "current . . . model year" must be 2010. There, therefore, the legislature indisputably uses the phrase vehicles of the "current . . . model year" to refer to vehicles of the model year currently in circulation between the dealer and the manufacturer,[7] not those of the current calendar year.  Applying the same meaning of that phrase to the present case, where Plaintiff received two shipments of model year 2010 vehicles prior to its termination, the "current . . . model year" must be 2010, the "immediate prior model year" 2009, and no obligation must exist with regard to vehicles from model year 2008.

Considering the contrary view, the only way Plaintiff's interpretation could be correct – such that vehicles of the "current . . . model year" refers to those from the current calendar year – would be if the legislature used this phrase inconsistently in the two versions of this statute.  We do not categorically rule out this possibility.  However, Louisiana's usual rule presumes otherwise, and we would need a strong reason to overcome that presumption here, where the newer version of the statute was promulgated the very next legislative session, by the same legislative committee, addressing the same topic, using substantially the same language, and exactly the same disputed phrase.  As we find no such reason, and the parties present none, we follow the usual rule in presuming the legislature's consistency, and we accordingly adopt the interpretation urged by

---

[7]  As it is not relevant to our decision here, we do not decide by precisely which commercial act the "current" model year is determined, whether, as urged by Defendants, it be that last delivered to the dealer, or that offered by the manufacturer, ordered by the dealer, sold or advertised by the dealer to the public, or some other act..

Defendants rather than Plaintiff.[8]

The above rests on the presumption of consistency across different versions of the same statute. We also note that some variant of the phrase "current and immediate prior model year" occurs eight times just in the 2009 amendments which we are interpreting here, in other words, in the same version of the statute.

For instance, in defining who is covered by a certain portion of the statute governing certain used vehicle dealers, and elsewhere defining who is subject to regulation by the Louisiana Used Motor Vehicle Commission, the statute provides that these provisions cover those dealers who sell or rent vehicles or products "not of the current year or immediate prior year models." This phrase is explicitly intended to define those selling or renting "used" products or vehicles. However, under Plaintiff's interpretation of "current year," it would include as used dealers those selling or renting the very latest models, as applied to the present case, those selling or renting 2010 models, as these models under Plaintiff's interpretation would be "not of the current year or immediate prior year." These dealers would be classified as "used" dealers until December 31, 2009, then on January 1, 2010 they would be reclassified as "new" dealers, until they began to receive vehicles for the next model year that summer, when they would against become used dealers. Such a scheme would obviously be absurd. In contrast, the obviously intended result, whereby these dealers are never classified as used dealers, is reached if this provision is interpreted as urged by Defendants, whereby "current year" models refers to those from the most recent model year in circulation, rather than to

_____

[8] Though we can only speculate as to what motivated the change in wording, we note that in other areas of the statute governing the repurchase of other types of vehicles the present, "new" wording was used. Therefore, it is at least not unreasonable to speculate that the language was changed merely to make it consistent throughout the statute, rather than to modify its substantive meaning.

those from the current calendar year.

Accordingly, intertextually, these examples of the legislature's multiple other uses of the disputed phrase and ones similar to it in other versions of the statute and the very enactment applicable here, convince us that it uses the phrase to mean the interpretation urged by Defendants, rather than by Plaintiff.

## B. Defendants' interpretation is likewise supported by text and custom

As explained, the parties also differ on whose interpretation is better supported by a purely textual reading of the statute. We find that neither interpretation is inconsistent with the statute's text, but we conclude that Defendants' interpretation gives the phrase its more likely "prevailing meaning," especially given the custom and usage of the motor vehicle and ATV industry.

First, as discussed above, we find that neither interpretation is inconsistent with the text based on Plaintiff's argument about the "ordinary" meaning of "current . . . year," and Defendants' counterargument that Plaintiff's failure to consider the import of including the word "model" in the phrase calls its interpretation into question, and at least makes it sufficiently ambiguous or identifies it as a word of art so as to warrant further inquiry. See discussion, *supra*, citing *ABL Mgmt.*, 773 So.2d at 135; see also *Roberts v. City of Baton Rouge*, 236 La. 521, 542 (La. 1958) ("It is axiomatic that in the construction and interpretation of statutes all of its parts, each words [sic], each phrase and each clause is intended to have a meaning.")

Second, and as discussed by Defendants, we find that the term "model year" is employed and understood throughout the motor vehicle and ATV industry to refer to vehicles from a period distinct from the applicable calendar year. As here, models labeled for one model year generally begin to arrive at dealerships and be sold to the public the summer or fall of the previous calendar year. So,

we conclude that this "generally meaning" should is that which should "prevail" in a statute regulating this industry.[9] Further, and as discussed above, other portions of the statute show that the legislature did in fact intend this usage.

Accordingly, we find that a textual reading of the statute likewise favors Defendant's interpretation rather than that of Plaintiff.

## C. The purpose of the law is also better-served by Defendant's interpretation

Finally, as discussed by the parties, the purpose of a repurchase statute is to protect licensees, franchisees, or dealers in the event their license, franchise, or dealership is terminated. Defendants make a strong case that these protections make little sense if they require the repurchase only of certain older vehicles and not, given that new model delivery often begins in the summer, perhaps as much as a half year's worth of the vehicle inventory most recently received by the dealer. Given Louisiana's rule that even a clear and unambiguous statutory interpretation should be rejected if it leads to absurd results, La. Civ. Code art. 9, Defendants argue that Plaintiff's interpretation should be rejected on this basis alone.

We do not find the case to be as compelling as Defendants claim. Newer vehicles likely sell better than older ones, so it would not be absurd if the legislature had concluded that dealers needed repurchase protection only with regard to their older vehicles and not their newer ones. For this reason, we do not find the results of Plaintiff's interpretation to be so absurd that, even were the other modalities of interpretation in its favor, we would nonetheless be compelled to reject it.

---

[9] Ultimately, whether under Louisiana's rules of statutory interpretation the phrase is considered a word of art, such that its meaning is properly understood by reference to industry custom, or this usage is simply so common as *to be*, for the public as well as the industry, the phrase's "generally prevailing meaning," we do not decide, for the result is the same.

-13-

Nonetheless, we do find that Defendants' interpretation better serves the law's purpose and was more likely the one intended by the legislature. The various obligations of manufacturers and distributors under the Repurchase Statute, including to repurchase within 30 days all parts, new vehicles, signs with the manufacturer's trademark or name, and specialty tools and service equipment,[10] are clearly intended to permit a dealer to rapidly wind down its franchise. It is conceivable that a dealer could rid itself of a half year's inventory in 30 days before having to give up its sign, dealership, and marketing rights. However, we agree with Defendants that it makes more sense that the statute would oblige the manufacturer or distributor to repurchase all of the items a dealer is most likely to have on hand, including and especially the vehicles most recently shipped to it.

## D.  Conclusion

In all, applying Louisiana's rules of statutory construction, all of the modalities of interpretation applicable here – text, intertextual consistency, and purpose – support Defendants' interpretation more than that of Plaintiff. Accordingly, we conclude that the meaning urged by Defendants is the correct interpretation as a matter of law, and the disputed phrase does not required them to repurchase the vehicles from the 2008 model year.

## IV.  OTHER ISSUES

## A.  The interpretation of the Louisiana Recreational and Used Motor Vehicle Commission ("the Commission") is not entitled to judicial deference

Regarding Defendants' argument that its interpretation should also be adopted because we

---

[10]  This list is illustrative, not exhaustive, and each of these categories is defined in greater detail and limited in the statute; accordingly, no conclusion regarding Defendants' obligations as to these other items should be drawn here.

owe judicial deference to the construction used by the Commission, we do not regard this construction as dispositive, or even particularly persuasive.

An agency decision can be given deference under the Louisiana Administrative Procedure Act ("La. APA"), but neither party asserts that the formalities of that Act have been complied with here, or that it is otherwise applicable. See LA. REV. STAT. 49:950 (defining the process of agency adjudication and judicial appeal).

Otherwise, and as Defendants seem to argue, the Commission's interpretation could be entitled to deference under Louisiana's "contemporaneous construction doctrine." See *Bd. of Trustees of State Employees Group Benefits Program v. St. Landry Parish Bd., et al.*, 844 So.2d 90, 94 *et seq* (La. App. 1 Cir. 2003) (applying the doctrine to a policy adopted by resolution and never published in the Louisiana Register). This doctrine holds that "[a] long settled contemporaneous construction by those charged with administering the statute is given substantial and often decisive weight in its interpretation." *State v. BP Exploration & Oil, Inc.*, 686 So.2d 823, 828 (La. 1997) (citing *Traigle v. PPG Indus., Inc.*, 332 So.2d 777, 782 [La. 1976]). However, we find this rule inapplicable to the facts before us, for two reasons.

For one, the "contemporaneous construction doctrine" is so named because, for an interpretation to be entitled to deference, it must be *contemporaneous*. Here, the Commission only administered the statute until 2005 or 2006. It thus had no authority over the disputed statute when the present dispute arose – 2009 – and it had not exercised such authority for several years. We know of no authority holding that an agency's interpretations is entitled to deference years after the agency was stripped of its administrative authority, and Defendants present none. See *Jurisich v. Jenkins*, 749 So.2d 597, 602 (La. 1999).

-15-

For two, the doctrine only applies to agency constructions that, even if not found in the Louisiana Register, are nonetheless "long settled," meaning long standing, widely known in the applicable audience, and consistently applied. *Traigle*, 332 So.2d at 782; see also *Tennessee Gas Transmission*, 176 So.2d at 443; *Bd of Trustees of State Employees*, 844 So.2d at 99-100. We are not convinced that the present construction qualifies.

Defendants submits this construction in the form of emails received by their representatives from employees of the Commission. These state that at a "Regular Board Meeting" of the Comission, "a discussion was held regarding the repurchase" statute, and the Commission agreed to adopt Defendant's interpretation as part of its official policies and procedures. Plaintiff objects to this evidence on grounds of authenticity and hearsay, while Defendants reply that it is admissible under the Public Records exception. (Doc. 46, pp. 3-4).

Putting aside the evidentiary objection,[11] the form by which this construction is submitted and the attempt to classify it as a public record together highlight its weakness. Agency constructions, including policies and procedures, are typically admissible as public records because they are *public* and *records*, while this construction is neither. Consequently, it lacks the qualities necessary to entitle it to contemporaneous construction deference. For instance, it is unclear whether the Commission ever actually voted on this policy, and if so by what margin, or whether it received commentary from those in the regulated industries before adopting it. So, we do not know if it considered itself merely to be formalizing the already existing custom of the industry or to be crafting a new interpretation. In addition, the Commission apparently never published the policy, including on its own website, much less in the Louisiana Register or another such venue where it

---

[11] We do not decide the objections here, as our decision renders them moot.

could be subjected to public scrutiny and critique. So, again, we do not know if it was widely accepted – or even known about – by the relevant industry and / or the general public. Likewise, it is unclear whether the policy was ever actually used by the Commission or if it was merely adopted at that meeting, and if used, whether it was done so consistently or with exceptions and deviations allowed in particular circumstances. Finally, and most importantly, we are not told whether those subject to it ever had the opportunity to comment on it, much less challenge it before a court or other neutral arbiter.

For all of these reasons, and based on the facts before us, we find that this policy is not entitled to deference, either as an agency's long standing "contemporaneous construction," or under the La. APA, and we decline to make it a factor in our decision.

## B. Though Plaintiff only moved against one Defendant, we consider this interpretation the law of the case and thus applicable to all parties

Finally, as applied to the present case, the Repurchase Statute would permit Plaintiff to demand repurchase from either of the Defendants, Arctic – the manufacturer – or Arctic Sales–the distributor. Plaintiff elected to demand collection from Arctic and accordingly moved here for summary judgment only against it. Nonetheless, with regard to the language in dispute, the statute does not distinguish between the manufacturer and the distributor, meaning that the same considerations would govern were Plaintiff now to move against Arctic Sales. Further, here both Defendants cross-moved for summary judgment against Plaintiff, and both have responded jointly to all of Plaintiff's filings. Consequently, and for purposes of clarity, we order that, though Plaintiff only moved against one Defendant, Defendants' motion is granted as to both of them, and the interpretation of the statute articulated in this ruling is the law of the case and applies to all parties.

## CONCLUSION

Regarding the parties' different interpretations of the 2009 version of the Louisiana Repurchase Statute, we agree with Defendants that, as applied here, the statute requires the repurchase of the vehicles from only the 2010 and 2009 - and not the 2008 - model years. Accordingly, for the reasons given above and as memorialized in a separate order also issued this date, we DENY Plaintiff's motion for summary judgment (Doc. 37) and GRANT that of Defendants (Doc. 40).

SIGNED on this 28 day of March, 2011 at Alexandria, Louisiana

DEE D. DRELL
UNITED STATES DISTRICT JUDGE